UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SHANNON SIMM ZWETZIG, | ) | CIV. 13-5026-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Shannon Simm Zwetzig filed a complaint appealing from an administrative law judge's ("ALJ's") decision denying Supplemental Security Income ("SSI") benefits.   (Docket 1).   Defendant denies plaintiff is entitled to benefits.   (Docket 23).   The court issued an amended briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").   (Docket 19).   The parties filed their JSMF.   (Docket 20).   For the reasons stated below, plaintiff's motion to reverse the decision of the Social Security Administration Commissioner ("Commissioner") (Docket 21) is denied and the decision of the Commissioner is affirmed.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 20) is incorporated by reference.   Further recitation of salient facts is included in the discussion section of this order.

On June 26, 1992, plaintiff Shannon Simm filed an application for SSI alleging disability since January 1, 1991.[1]  (Docket 20 at ¶ 1).   On September 10, 1992, the claim was denied because Ms. Zwetzig failed to attend a scheduled consultative examination.   Id.   On May 23, 1995, Ms. Zwetzig filed a second application for SSI alleging disability since January 1, 1995.   Id. at ¶ 2.   ALJ Joanne L. Anderson held a hearing on the claim on February 5, 1997.   Id.; see also (Administrative Record at p. 799).[2]   ALJ Anderson denied the claim on May 21, 1997.   (Docket 20 at ¶ 2).   On September 12, 1997, Ms. Zwetzig requested review by the Appeals Council of the Social Security Administration ("SSA").   Id. at ¶ 3.

On July 10, 1997, while Appeals Council review was pending, Ms. Zwetzig filed a third application for SSI with a disability onset date of January 1, 1991. Id. at ¶ 4.   On December 2, 1998, based on Ms. Zwetzig's third application for SSI, the SSA found her to be disabled as of July 1, 1997, but ineligible for SSI benefits due to her husband's income.   Id.; see also AR at p. 799.   On November 15, 1999, the Appeals Council vacated ALJ Anderson's May 21, 1997, decision and remanded the case to another ALJ for resolution of the following issues:

---

[1]As of the date of filing suit in this court, plaintiff Shannon Simm changed her name to Shannon Simm Zwetzig.   The court refers to plaintiff as Ms. Zwetzig.

[2]The court will cite to information in the administrative record as "AR at p. ___."

- Make specific credibility findings regarding the testimony of the claimant's spouse and mother;

- Reassess the claimant's maximum residual functional capacity, showing full consideration to the limitations resulting from the mental impairment and provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations; and

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational bases.

(AR at p. 800) (citing AR at p. 308); see also (Docket 20 at ¶ 5).

On March 9, 2000, ALJ Nicholas LoBurgio held the remand hearing. (Docket 20 at ¶ 5).   On July 27, 2000, ALJ LoBurgio issued an unfavorable decision finding Ms. Zwetzig not to be disabled during the adjudicative period before him, September 11, 1992 through January 31, 1995.  Id. at ¶ 6.   ALJ LoBurgio found Ms. Zwetzig "had not satisfied [the] SSR 91-5p criteria to extend the time to appeal the denial of her 1992 claim."   Id.   ALJ LoBurgio noted Ms. Zwetzig "failed to provide evidence of lack of mental capacity in September 1992 . . . and . . . [Ms. Zwetzig] provided inconsistent narratives."   Id. (citations omitted).   ALJ LoBurgio concluded Ms. Zwetzig's "request to revisit the 1992 claim could not rely on SSR 95-1p because her application was in 1992 and the ruling applied to earlier claims."   Id. (citations omitted).

On August 28, 2000, Ms. Zwetzig requested Appeals Council review.   Id. at ¶ 7.   On December 4, 2001, the Appeals Council affirmed ALJ LoBurgio's decision that Ms. Zwetzig "was not disabled, and his determination not to revisit

the June 1992 application."   Id. at ¶ 8.   On February 1, 2002, Ms. Zwetzig

sought district court review of ALJ LoBurgio's decision.   Id. at ¶ 9; see also

Simm v. Barnhart, Civ. No. 02-5012-KES (D.S.D. Feb. 1, 2012) (Docket 1).

While Ms. Zwetzig's action was pending before the court, counsel for the

Commissioner moved to remand the case to the SSA pursuant to "sentence four

of 42 U.S.C. § 405(g)."   Simm, Civ. No. 02-5012-KES (Docket 18 at p. 1).   On

October 15, 2002, the district court remanded the case to the SSA.   See id. at

(Docket 19).

On June 14, 2003, the Appeals Council vacated ALJ LoBurgio's July 27,

2000, decision and remanded the case to ALJ James Olson.   (Docket 20 at

¶ 10).   The Appeals Council instructed ALJ Olson to "offer the claimant an

opportunity to submit additional evidence and/or testimony regarding her

medical condition from May 1, 1995 through June 30 1997."   (AR at p. 801).

ALJ Olson was instructed to make findings and issue a decision regarding

whether Ms. Zwetzig was disabled during that period, and, if she was disabled,

the ALJ was to obtain evidence of her "relationship with Mr. [William] Simm [her

husband] beginning May 1, 1995, as well as Mr. Simm's income and resources."

Id.

On February 24, 2004, a third hearing was held before ALJ Olson.

(Docket 20 at ¶ 11); see also AR at p. 801.   On April 27, 2004, ALJ Olson issued

an unfavorable decision.   (Docket 20 at ¶ 11).   Ms. Zwetzig requested Appeals

Council review.   Id.   On November 2, 2006, the Appeals Council vacated ALJ

Olson's decision and remanded the case to another ALJ.   Id. at ¶¶ 11-12; see also AR at pp. 801-02.   The Appeals Council instructed the ALJ to resolve the following issues:

- Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments;

- Evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929, pertinent circuit case law, and Social Security Ruling 96-7p);

- Address the third party statement in the record;

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c); and

- If warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.]

(AR at pp. 801-02) (citing AR at pp. 922-24).

On June 27, 2007, ALJ Larry M. Donovan held the fourth hearing on the matter.   (Docket 20 at ¶ 12).   ALJ Donovan issued an unfavorable decision, and Ms. Zwetzig requested Appeals Council review.   (Docket 20 at ¶ 12).   The Appeals Council remanded Ms. Zwetzig's case to another ALJ with the following instructions:

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929, pertinent circuit case law, and Social Security Ruling 96-7p);

5

- Address the third party statement of the claimant's mother at Exhibit 44;

- Further evaluate the claimant's mental impairments [in] accordance with 20 CFR 416.920a, by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c); and

- If warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

(AR at p. 802) (citing AR at pp. 1028-31).

On April 19, 2011, ALJ Randi E. Lappin, appearing by video, held Ms. Zwetzig's fifth hearing.   (Docket 20 at ¶ 13).   Following the hearing, ALJ Lappin determined the vocational expert present at the hearing was incompetent. (Docket 20 at ¶ 13).   ALJ Lappin held a supplemental hearing on December 6, 2011, to receive testimony from vocational expert William J. Tysdal.   Id.; see also AR at p. 802.   Ms. Zwetzig and her counsel appeared in person at the supplemental conference, and ALJ Lappin appeared by video.   (AR at p. 802). On May 11, 2012, ALJ Lappin issued an unfavorable decision finding Ms. Zwetzig not to have been under a disability since May 23, 1995.   Id. at 827. Ms. Zwetzig requested Appeals Council review.   (Docket 20 at ¶ 13).   On February 12, 2013, the Appeals Council denied Ms. Zwetzig's request.   Id.   ALJ Lappin's decision constitutes the final decision of the Commissioner of the Social Security Administration.   42 U.S.C. § 405(g); 20 CFR § 422.210(a).   It is from this decision Ms. Zwetzig timely appeals.

The issue before the court is whether ALJ Lappin's decision of May 11, 2012, finding Ms. Zwetzig was "not under a disability, as defined in the Social Security Act, since May 23, 1995, the date the application was filed" is supported by substantial evidence on the record as a whole.   (AR at p. 827); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.   The court reviews the Commissioner's decision to determine if an error of law was committed.   Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).   "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."   Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (citation and internal quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."   Reed v. Barnhart,

399 F.3d 917, 920 (8th Cir. 2005) (quoting <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.   <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005).   A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " <u>Reed</u>, 399 F.3d at 920 (quoting <u>Shannon v. Chater</u>, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled.   20 CFR § 404.1520(a)(4).   If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.   <u>Id.</u>   The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the

8

> claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).   The ALJ applied the five-step sequential evaluation required by the SSA regulations.   (AR at pp. 808-27).   At step five of the evaluation, ALJ Lappin found "there are jobs that exist in significant numbers in the national economy that [Ms. Zwetzig] could perform."   Id. at 826-27.

## PLAINTIFF'S ISSUES ON APPEAL

Plaintiff's brief in support of her motion to reverse the decision of the Commissioner argues ALJ Lappin[3] failed to apply the correct legal standard in refusing to reopen or grant Ms. Zwetzig a "deemed" appeal date with respect to her 1992 claim.   (Dockets 22; 23).   Ms. Zwetzig further claims the ALJ improperly assessed her residual functional capacity ("RFC") and relied on flawed vocational expert testimony.   (Docket 22).

**1.     The ALJ's Refusal to Reopen Ms. Zwetzig's 1992 Claim Did Not Violate Ms. Zwetzig's Due Process Rights**

Ms. Zwetzig asserts the ALJ failed to apply the correct legal standard in refusing to reconsider or grant her a "deemed" appealed date with respect to her 1992 SSI application.   (Dockets 22 at pp. 34-41; 24 at pp. 2-3).   The

---

[3]Except where necessary to avoid confusion, ALJ Lappin is referred to as "ALJ."

government responds that the court does not have jurisdiction to adjudicate the Commissioner's decision.   (Docket 23 at pp. 8-9) (citing Boock v. Shalala, 48 F.3d 348, 351-52 (8th Cir. 1995).

Ms. Zwetzig objects to the ALJ's characterization that plaintiff sought to "reopen" her June 1992 claim.   (Docket 22 at pp. 40-41).   Re-opening and granting an extension of time to request reconsideration are separate and distinct remedies.   Boock, 48 F.3d at 350; see also Anderson v. Barnhart, Civ. No. 03-2611JRT/JGL, 2004 WL 2066829, at *3 (D. Minn. Sept. 1, 2004). "Re-opening typically occurs after a claimant has already exhausted all levels of administrative review.   Re-opening is discretionary, does not require a hearing, and presumes that plaintiff has already received all the process [she] was due." Anderson, 2004 WL 2066829, at *3 (citing 20 CFR § 404.988 ("Conditions for Reopening")); see also Boock, 48 F.3d at 350-51.

Conversely, "reconsideration" is a step in the administrative process in which the Commissioner grants an extension of time "to ensure that a claimant receives the due process to which [she] is entitled."   Anderson, 2004 WL 2066829, at *3.   "Unlike the discretionary nature of a re-opening request, an extension of time in which to request reconsideration may be granted for good cause, and requires that findings be made."   Id. (citing SSR 91-5p).   Social Security Ruling ("SSR") 91-5p states where a claimant presented sufficient evidence "establish[ing] . . . she lacked the mental capacity to understand the

procedures for requesting review," good cause exists for extending the time in which the claimant can request review.   SSR 91-5p, 1991 WL 208067, at *2.

Ms. Zwetzig "claim[ed] that she lacked the ability to request reconsideration in 1992 because 1) SSA provided misleading formation [sic] that dissuaded her from pursuing her appeal rights, and 2) she lacked mental capacity to understand and pursue her appeal rights."   (Docket 22 at p. 35). Ms. Zwetzig asserted "she showed grounds for finding a 'deemed' appeal date." (Docket 24 at p. 2).

The court concludes Ms. Zwetzig was not seeking to re-open her 1992 claim, or, stated differently, she was not requesting the ALJ to re-address the merits of her claim.   See Boock, 48 F.3d at 351.   Rather, Ms. Zwetzig sought to demonstrate that grounds existed for her to receive an extension of time in which to appeal the denial of her claim.   Ms. Zwetzig's request is appropriately classified as request for reconsideration.   Although the ALJ referenced Ms. Zwetzig's request as one to "reopen" her 1992 claim, this is merely a misnomer as the ALJ correctly applied the law with respect to Ms. Zwetzig's claim.   See AR at 803-08.

"A federal district court's jurisdiction to review the [Commissioner's] decisions regarding disability benefits is governed by 42 U.S.C. § 405(g), which provides review only of a 'final decision of the [Commissioner] made after a hearing.' "   Boock, 48 F.3d at 351 (quoting 42 U.S.C. § 405(g)).   "However, if jurisdiction is not available under 405(g), the district court may also review the

[Commissioner's] decision if the plaintiff alleges a colorable claim of unconstitutionality." Id. (citing Califano v. Sanders, 430 U.S. 99, 109 (1997); Gipson v. Harris, 633 F.2d 120, 122 (8th Cir. 1980)).

"It is well-settled that the [Commissioner's] refusal to reopen an administratively final decision under 20 CFR § 404.988 is not a 'final decision . . . made after a hearing' subject to judicial review under 405(g)." Id. (quoting 42 U.S.C. § 405(g)) (citing Sanders, 430 U.S. at 107-08; Lewellen v. Sullivan, 949 F.2d 1015, 1016 (8th Cir. 1991)).   Furthermore, "[i]t is equally well-settled that the [Commissioner's] determination of no good cause to extend the period for appeal under 20 CFR § 404.909 is similarly not subject to judicial review under § 405(g)." Id. (citing Turner v. Bowen, 862 F.2d 708, 709–10 (8th Cir.1988); Smith v. Heckler, 761 F.2d 516, 519 (8th Cir.1985); Sheenan v. Sec'y of Health, Educ. & Welfare, 593 F.2d 323, 325 (8th Cir.1979)).

Section 404.909(b) provides the process by which a claimant who "want[s] a *reconsideration* of the initial determination but [did] not request one in time . . . may ask [the SSA] for more time to request reconsideration." 20 CFR § 404.909(b) (emphasis added).   "If [the claimant] shows [the SSA] that you had good cause for missing the deadline, [the SSA] will extend the time period.   To determine whether good cause exists, [the SSA] use[s] the standards explained in § 404.911." Id.   Section 404.911 outlines the factors the SSA will consider in determining whether a claimant has shown good cause for missing the deadline:

(1) What circumstances kept you from making the request on time;

     (2) *Whether our action misled you*;

     (3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and

     (4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.

20 C.F.R. § 404.911(a) (emphasis added); see also 20 CFR § 416.1411(a) (employing the same language to describe the factors the SSA will consider when determining whether good cause existed for missing the deadline to request a review).

     With regard to the claimant's mental capacity, SSR 91-5p, interpreting the policy behind sections 404.909(b), 404.911 and 416.411 outlines the factors an adjudicator must consider when determining whether a claimant's mental capacity gave rise to good cause for the claimant's failure to timely request a review:

     (1) [A]n inability to read or write;

     (2) [L]ack of facility with the English language;

     (3) [L]imited education; [and]

     (4) [A]ny mental or physical condition which limits the claimant's ability to do things for him/herself.

SSR 91-5p, 1991 WL 208067, at *2.

     The government asserts the court lacks jurisdiction to "consider the [SSA's] refusal to reopen" Ms. Zwetzig's 1992 claim.   (Docket 23 at p. 8).

13

Although the court has clarified Ms. Zwetzig's request is properly understood as a request for "reconsideration" rather than a request to "re-open" her 1992 claim, the court finds it lacks subject matter jurisdiction under 42 U.S.C. § 405(g) to adjudicate the claim.   See Boock, 48 F.3d at 351.   Ms. Zwetzig's due process argument requires a separate analysis.

The court finds Ms. Zwetzig's assertion she failed to timely request reconsideration of her 1992 application due to the misinformation provided by the SSA and her lack of mental capacity to understand and respond to the SSA's denial raise a colorable due process question.   See Califano v. Sanders, 430 U.S. 99, 109 (1977); Boock, 48 F.3d at 351, 353; Efinchuk v. Astrue, 480 F.3d 846, 848 (8th Cir. 2007) ("Jurisdiction may exist, however, if the claimant challenges the refusal to reopen the proceeding on constitutional grounds.") (citations omitted); Anderson, 2004 WL 2066829, at *2 ("Plaintiff's assertion that he lacked the mental capacity to understand and respond to the 1978 and 1980 denials raises a colorable due process question.") (citations omitted); Vogt v. Barnhart, No. 4:01-CV-3225, 2003 WL 403345, at *16 (D. Neb. Feb. 21, 2003).   The court finds it has jurisdiction to adjudicate Ms. Zwetzig's due process claim.

"[D]ue process does not guarantee a favorable result, *only procedures reasonably calculated to afford claimants a meaningful*

*opportunity to be heard . . . ."*   Boock, 48 F.3d at 353 n.8 (emphasis

added).   In the "reconsideration" context, "due process requires that the

ALJ articulate findings with respect to plaintiff's request, pursuant to SSR

91-5p, that [the claimant] be granted an extension of time in which to

request reconsideration of [her] prior applications."   Anderson, 2004 WL

2066829, at *5.   "[T]he question is not whether sufficient procedures are

in place, but whether plaintiff had an opportunity to avail [herself] of those

procedures."   Id.

The court finds Ms. Zwetzig failed to state a claim for a due process

violation.   Counsel represented Ms. Zwetzig at the hearing before the ALJ

and provided the ALJ with a brief in support of the argument that Ms.

Zwetzig's 1992 application should be reconsidered.   (AR at pp. 802).   The

ALJ received and considered all of the proffered testimony and argument.

See id. at 802-08.   The ALJ wrote a twenty-nine page opinion

meticulously analyzing and considering Ms. Zwetzig's request for

reconsideration due to her mental capacity and reliance on misinformation

provided by the SSA under the factors enumerated in SSR 95-5p and 20

CFR § 416.1411, respectively.[4]   Id. at 799-827.   The ALJ articulated a

---

[4]The court agrees with the ALJ's analysis that 20 CFR § 416.1411, not
§ 416.351, provides the legal standard for determining whether a claimant's
failure to timely request review due to a misleading SSA action is supported by
good cause.   (AR at pp. 806-08); Compare 20 CFR § 416.1411, with 20 CFR
§ 416.351 (Section 416.1411 references good cause for missing the deadline to
request review, while section 416.351 refers to a claimant who was provided
misinformation regarding his or her eligibility for benefits and the
misinformation caused the person "not to file an application at that time.").

well-reasoned rationale in support of her determination Ms. Zwetzig "has not established good cause for her failure to file a review of her September 1992 initial denial, and she has not presented credible evidence either that she was misled by the [SSA] or that her failure to appeal the 1992 [denial] was the result of any such misinformation."   (AR at p. 808); see also Efinchuk, 480 F.3d at 848-49.

The court finds Ms. Zwetzig took "advantage of [the SSR 91-5p and 20 CFR § 416.1411] procedures and had full opportunity to apply for an extension of time . . . in light of [her] mental condition [and misinformation claim]."   Boock, 48 F.3d at 352-53.   Ms. Zwetzig raised the issue of the reconsideration of her initial 1992 denial on no less than five separate occasions: in a February 7, 2000, affidavit; in her March 9, 2000, hearing before ALJ LoBurgio; in a September 4, 2001, memorandum to the Appeals Council; in a December 9, 2011 post hearing memorandum to ALJ Lappin; and in her January 7, 2014 appeal to this court.   See AR at p. 803; Docket 22 at pp. 35-41.   ALJ Lappin heard, considered and articulated specific findings rejecting Ms. Zwetzig's request for reconsideration of her 1992 claim.

---

Ms. Zwetzig's assertion that the Seventh Circuit considers this argument a "quibble" is in error.   (Docket 22 at pp. 37-38).   In Costello v. Astrue, the Seventh Circuit rejected the argument that a claimant must use the word "eligibility" in order to receive protection against the receipt of misinformation under 20 CFR § 404.633 when *applying* for benefits.   499 F.3d 648, 650-51 (7th Cir. 2007).   The Seventh Circuit expressed no opinion on the appropriate regulation to apply in cases where the claimant missed the deadline to request review.

The court finds Ms. Zwetzig has failed to adduce any evidence about the proceedings "(1) indicat[ing] [ALJ Lappin] could not render a fair judgment, (2) show[ing] the procedural safeguards were constitutionally inadequate, or (3) shock[ing] the conscience."   Efinchuk, 480 F.3d at 848-49 (citing Liteky v. United States, 510 U.S. 540, 551 (1994).   By all measures the ALJ afforded Ms. Zwetzig's due process rights the appropriate level of protection.

The cases cited by Ms. Zwetzig are inapposite.   See Docket 22 at p. 41 (citing Culbertson v. Sec'y Health & Human Servs., 859 F.2d 319 (4th Cir. 1988); Young v. Bowen, 858 F.2d 951 (4th Cir. 1988); Elchediak v. Heckler, 750 F.2d 892 (11th Cir. 1985)).   Culbertson, Young and Elchediak hold a claimant's due process rights are violated when the Commissioner "applies administrative *res judicata* to bar [a claimant's] later claim . . . without considering whether the claimant, in failing to appeal the earlier claim, had the mental capacity to understand the [extension] notice." Boock, 48 F.3d at 353 n.8 (emphasis added).

The ALJ considered and found Ms. Zwetzig had the mental capacity to understand the procedures for requesting review.   (AR at p. 806). After allowing Ms. Zwetzig an opportunity to prove her reconsideration claim, the ALJ determined plaintiff failed to establish good cause for missing the deadline to request review of her 1992 claim because she failed

to present credible evidence indicating mental incapacity and that the SSA misled her.   Id. at p. 808.

In Canales v. Sullivan, the Second Circuit remanded because the district court, after having received plaintiff's affidavit averring a mental impairment, should have allowed plaintiff an opportunity to prove the claim.   936 F.2d 755, 759 (2d Cir. 1991).   Again, "due process does not guarantee a favorable result, only procedures reasonably calculated to afford claimants a meaningful opportunity to be heard."   Boock, 48 F.3d at 353 n.8.   Despite the unfavorable outcome to Ms. Zwetzig, the court finds she was meaningfully heard and her due process rights were satisfied.   The court dismisses Ms. Zwetzig's due process claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

To the extent Ms. Zwetzig argues the ALJ's refusal to reconsider her request for reconsideration is, in and of itself, a due process violation because "the ALJ[] improper[ly] rejected[ed] Dr. Renka's 1998 evaluation, and the ALJ's inadequate credibility assessment . . . undoubtedly influenced the ALJ's application of SSR 91-5p standards to [Ms. Zwetzig's] facts." (Docket 22 at p. 41).   The court concludes this argument is not a colorable constitutional claim.   Ms. Zwetzig's argument is essentially a claim that the ALJ either abused her discretion or erred in rejecting plaintiff's request for reconsideration of her 1992 application.   See Vogt, 2003 WL 403345, at *16.

18

This court has jurisdiction to adjudicate Ms. Zwetzig's reconsideration claim only to the "extent that [she] has raise[d] colorable constitutional issues that are collateral to and not inextricably intertwined with [her] claim for benefits."   Bullyan v. Heckler, 787 F.2d 417, 419 (8th Cir. 1986) (citing Sanders, 430 U.S. at 108-09) (further citations omitted); see also Vogt, 2003 WL 403345, at *16.   Ms. Zwetzig's argument is inextricably intertwined with her assertion she is entitled to SSI benefits beginning on the date of her June 1992 initial application.   The court has no jurisdiction to review Ms. Zwetzig's due process claim in this regard. See Bullyan, 787 F.2d at 420 (citing Heckler v. Ringer, 466 U.S. 602, 613-19 (1984)).

## 2.   The ALJ's Assessment of Ms. Zwetzig's Residual Functional Capacity Is Supported by Substantial Evidence

Ms. Zwetzig asserts the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence on the record as a whole.   (Docket 22 at pp. 31-34).   Ms. Zwetzig posits the ALJ improperly rejected Dr. Renka's 1998 opinion, improperly assessed her credibility and the credibility of Judy Shaykett and William Simm, and failed to consider the totality of Ms. Zwetzig's impairments.   Id.

During the adjudicative period, May 1, 1995 through June 30, 1997, the ALJ assessed Ms. Zwetzig's RFC as follows:

> [Ms. Zwetzig] remained able to lift and carry up to 10 pounds frequently and 20 pounds occasionally, and . . . she could push and pull within these same weight limits.   [Ms. Zwetzig] could sit for up

19

to one hour without interruption, after which she would require the opportunity to stand and stretch for one to two minutes at the workstation.   She could sit for a total of about six hours out of an eight-hour workday. [Ms. Zwetzig] could stand and/or walk up to one hour without interruption, after which she would require the opportunity to sit for up to 15 minutes. She could stand and walk each for up to six hours out of an eight-hour workday.   [Ms. Zwetzig] could frequently balance, stoop, crouch, kneel, and climb ramps and stairs.   She could occasionally crawl and climb ladders, ropes, or scaffolds.   [Ms. Zwetzig] could reach overhead no more than occasionally with the right upper extremity, but could do so frequently with the left. She could reach in all other directions frequently, bilaterally.   [Ms. Zwetzig] could tolerate no more than occasional exposure to extreme temperatures, high humidity, wetness, or respiratory irritants.   She needed to avoid traversing rough or uneven terrain and could only occasionally operate a motor vehicle.   She could not safely work at unprotected heights or in close proximity to exposed moving mechanical parts. Mentally, [Ms. Zwetzig] remained able to understand and remember simple, three[-] to four-step instructions; sustain attention for two-hour blocks throughout an eight-hour workday; and exercise sufficient judgment within that context to make basic work-related decisions. However, she required reminders and/or redirection once or twice per day to ensure timely and accurate completion of tasks.   [Ms. Zwetzig] remained able to adhere to a normal schedule, as well as adjust to changes in a routine work environment, but she could not sustain multi-tasking.   [Ms. Zwetzig] could not *interact* with the public, but could tolerate occasional public *contact*.   She remained able to interact appropriately with supervisors and co-workers, provided contact was neither frequent nor prolonged.

(AR at p. 814).

### a.   The ALJ's Consideration of Dr. Renka's 1995 and 1998 Opinions Is Supported by Substantial Evidence

The ALJ gave "substantial weight" to the findings and conclusions contained in Dr. Renka's 1995 report when assessing Ms. Zwetzig's RFC.   Id. at 821.   On September 11, 1995, Ms. Zwetzig presented to Dr. Renka for a consultative examination.   (Docket 20 at ¶ 28).   Ms. Zwetzig described being

20

sexually abused and raped by her mother's boyfriend as a teenager.   (Docket 20 at ¶ 29).   During that time, Ms. Zwetzig planned ways to kill herself.   Id.   At the examination, Ms. Zwetzig indicated she was sleeping well due to taking Trazodone but had a hard time waking up in the first hour of the morning.   Id. at ¶ 31.   Ms. Zwetzig reported a limited work history: she worked as a Kmart cashier but failed the 90 day probation period; she had a successful summer working at a tree nursery where her boss left her alone; she worked as a waitress from age 17-22; and she worked for a month at a factory in Huron before being fired for lateness and irritability.   Id. at ¶ 33.

Ms. Zwetzig reported generally having poor relationships with others and being a loner by her own design as she avoided going out.   Id. at ¶ 36.   However, Ms. Zwetzig stated she had one or two friends as well as her fiancé and soon to be husband Mr. Simms.   Id.   Ms. Zwetzig stated "Prozac was enormously helpful but the therapy itself was probably at least as helpful."   (AR at p. 550).   Ms. Zwetzig reported having good and bad days in terms of her mood, frequently noting she was in a better mood in the afternoon and a worse mood in the morning.   Id. at 551.   Ms. Zwetzig described her energy level as depending upon her mood but also stated her energy level could be good or bad depending on the day.   Id.   Ms. Zwetzig reported having hallucinations in the past.   Id. at 552.

Dr. Renka described Ms. Zwetzig as having a sober mood and appearing "mildly depressed with mild consistent anxiety."   Id.   Dr. Renka noticed "[n]o

bizarreness, blocking or looseness of association." Id.  Ms. Zwetzig was

"cooperative to examination but tended to be a little wordy." Id.  She exhibited

"no pressure of speech nor thought." Id.  Dr. Renka noted Ms. Zwetzig

"recalled three objects after five minutes.   She did serial seven subtractions.

She recited five digits and then reversed the string.   She is abstract to proverbs."

Id.  Dr. Renka's 1995 assessment of Ms. Zwetzig was:

> Axis I:    Post Traumatic Stress Disorder ("PTSD"), residual.
> Major depression, recurrent, nonpsychotic.
>
> Axis II:   Borderline features.
>
> Axis III:  Scoliosis.  Spinabifida.  Lymphangioma circumscriptum.
>
> Axis IV:  Severe [PTSD] history
>
> Axis V:   Fair.

Id.

Dr. Renka reported Ms. Zwetzig "needs Prozac to avoid recurrence of

depression" and "[s]he probably carries dysthymia from childhood that has

fueled her episodic outbursts of the depression." Id.  Dr. Renka, the only

examining doctor to express an opinion on Ms. Zwetzig's ability to work, stated

"[h]er capability to work is probably a bit limited, although in the proper setting

she might be able to do some forms of work. She probably would not handle the

public very well. She would need a very understanding boss." Id. at 553.

In 1998, Dr. Renka evaluated Ms. Zwetzig a second time.   (Docket 20 at

¶ 42).   Dr. Renka's 1998 assessment is significantly different from his 1995

assessment.   At the outset of the 1998 report, Dr. Renka states, "[t]here has

been a great deal of diagnostic confusion over time, and I must include myself in this.   It is clear that [Ms. Zwetzig] suffers residual PTSD and significant depressive disorder with mood swings."   Id. at ¶ 43.   Dr. Renka's 1998 assessment of Ms. Zwetzig was:

Axis I.    A. Bipolar affective disorder, Type II, with seasonal affective components.

B. Panic disorder with agoraphobia.

C. [PTSD], residual.

D. Dysthymia.

E. Central auditory processing deficit, provisional.

Axis II.   Learning disability, reading comprehension, provisional. Dependent and borderline personality traits.

Axis III.   "Neurovascular" syncopal episodes.   Scoliosis. Lymphangioma circumscriptum.   Arthritis of the knees.

Axis IV.  Severe [PTSD].

Axis V.   Poor.

(AR at p. 692).

Dr. Renka described Ms. Zwetzig's "work history, including school efforts, [as] very poor."   Id. at 693.   With regard to her ongoing ability to work, Dr. Renka stated:

[Ms. Zwetzig] seems to have difficulties with mental functioning – reading comprehension and perhaps the mysterious "central auditory processing deficit." She just does not "get it" from speech, and so she would be seen as "slow" by almost all employers. Emotional factors, including difficulty with relationships, a great deal of sensitivity to criticism, and guilt proneness are also

important in her stamina in any job setting. Her copping [sic] skills are quite limited.

Id.

Ms. Zwetzig asserts the ALJ failed to consider Dr. Renka's 1998 opinion in light of Jones v. Chater.  65 F.3d 102 (8th Cir. 1995).  However, Jones is distinguishable.   In Jones, the issue was "whether retrospective medical diagnoses [of PTSD] uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed period of disability can support a finding of past impairment."  Id. at 103.   The Jones court held "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability."  Id. at 104.   The ALJ in Jones "failed to discuss the provocative medical diagnosis suggesting an impairment" and "failed to discuss potentially corroborating evidence from relatives."   Id.   The Jones court noted it is within the ALJ's province to make initial determinations of fact and credibility, but those determinations must be set out in the decision.   Id.   The ALJ in Jones simply did not document his findings in support of his assessment.   Id.

The ALJ expressly acknowledged and considered the 1998 opinions of Dr. Renka and Dr. Terry R. Hicks. (AR at pp. 824-25).   The ALJ also considered the opinions of Mr. Simms and Ms. Shaykett, Ms. Zwetzig's husband and mother. Id. at 824.   The ALJ concluded the doctors' 1998 opinions were inconsistent with other medical evidence in the record dated closer in time to the adjudicative period of May 1, 1995, through June 30, 1997.   Id. at 825.   The ALJ reasonably concluded Dr. Renka's 1995 opinion should receive more weight than his 1998

24

opinion when assessing Ms. Zwetzig's RFC for the adjudicative period.   Id. at 822-23.   And, as is shown below, the ALJ expressly considered and then concluded the allegations of Ms. Zwetzig, Mr. Simms and Ms. Shaykett to be less than fully credible.   Id.   As opposed to the ALJ in Jones, the ALJ provided a detailed analysis in support of her assessment that Dr. Renka's and Hick's 1998 opinions were substantially different from the record as it existed during the adjudicative period.   Id. at 825.

In reaching her assessment, the ALJ noted when Dr. Hicks examined Ms. Zwetzig in February 1997 her Global Assessment of Functioning ("GAF") score was 50, indicating serious impairments when functioning in a social, occupational or school setting, but Ms. Zwetzig's highest GAF score in the last year was 70, indicating only mild symptoms or no more than a slight impairment in social, occupational or school functioning.   Id. at 825 (citing AR at p. 584). As the ALJ found, Dr. Hick's treatment notes support the conclusion Ms. Zwetzig's condition showed signs of deterioration in 1998.   Id. at 351-53 (Ms. Zwetzig's GAF decreased from 60-70 to 50-60 from April 1998 to June 1998.).

The ALJ gave "fairly substantial weight" to the testimony of Michael Enright, Ph.D.[5]   Id. at 823.   Dr. Enright opined "even when [Ms. Zwetzig's] symptoms were most severe, she had only mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and no episodes of decompensation."   Id.   Dr. Enright

---

[5]Ms. Zwetzig does not object to the ALJ's interpretation of the substance of Dr. Enright's testimony.

further opined "the record showed a young woman who did well when on her medication, but not so well when not taking it. [Even] when he considered [Ms. Zwetzig's] most severe symptoms, she could still perform simple, repetitive tasks with only occasional face-to[-]face work interaction with the public."   Id.

The ALJ found the report of non-examining medical expert James Simpson, Ed.D, was entitled to "some weight" and "bolstered" her assessment of Ms. Zwetzig's RFC during the adjudicative period.   Id. at 823-24.   Dr. Simpson determined Ms. Zwetzig to be no more than moderately impaired in all work-related functions.   Id. at 867-69.   Dr. Simpson assessed Ms. Zwetzig's GAF score to be 60-65 and 70 and noted she "does well with meds."   Id. at 865. The ALJ stated she "did not rely on Dr. Simpson's opinions in determining [Ms. Zwetzig's] medically determinable impairments."   Id. at 824.   But, the ALJ concluded Dr. Simpson's opinions regarding Ms. Zwetzig's "functional limitations are entitled to some weight, since they are consistent with and supported by the record."   Id.

Ms. Zwetzig asserts the court cannot consider Dr. Simpson's opinions because the court's decision in Rathke v. Astrue found Dr. Simpson not to be a qualified psychological consultant.   See Docket 22 at pp. 33-34; Civ. No. 08-5084, 2010 WL 1258100, at *20 (D.S.D. Jan. 27, 2010), *adopted in part rev'd in part*, Rathke v. Astrue, Civ. No. 08-5084-JLV, 2010 WL 1258097 (D.S.D. Mar. 26, 2010).   Ms. Zwetzig's reliance on Rathke v. Astrue is misplaced. Furthermore, Ms. Zwetzig's assertion is inconsistent with the limited purpose for

26

which the ALJ used Mr. Simpson's opinions under 20 CFR § 416.913(d) and
SSR 06-03p.

In <u>Rathke v. Astrue</u>, the court made no finding that Dr. Simpson was "not
a qualified consultant."   Rather, the Appeals Council in that case determined
"Dr. Simpson was not an 'acceptable medical expert,' " and the magistrate judge
noted the determination in the "Facts" section of the Report and
Recommendation.   <u>Rathke</u>, 2010 WL 1258100, at *20.   The ALJ considered Dr.
Simpson's opinions under 20 CFR § 416.913(d) as an "other source" from whom
the ALJ can receive evidence.

The ALJ assigned "some weight" to the opinion of Dr. Christopher W.
Blank.   (AR at p. 822).   On November 20, 1997, Dr. Blank opined the results of
his testing on Ms. Zwetzig were "consistent with [his] impression . . . that [Ms.
Zwetzig] is exaggerating [her symptoms], possibly with a clear goal in mind. . . . I
do not know whether her claim of depressive [symptoms] reflects real
[symptoms]."   <u>Id.</u> at 623.

As noted above, it is not the role of the court to re-weigh the evidence and,
even if this court would decide the case differently, it cannot reverse the
Commissioner's decision if that decision is supported by good reason and is
based on substantial evidence.   <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th
Cir. 2005).   It is the province of the ALJ to make initial factual determinations
and credibility assessments.   The ALJ received conflicting evidence and
considered it in light of the entire record.   The ALJ gave good reasons and

27

properly supported her decision to give "substantial weight" to Dr. Renka's 1995 opinions as opposed to his 1998 opinions.   Contrary to Ms. Zwetzig's assertions, although Ms. Zwetzig was found to be disabled by the SSA beginning on July 1, 1997, this does not require a finding she was disabled from May 1, 1995 to June 30, 1997.   The ALJ's decision to credit Dr. Renka's 1995 opinions is supported by substantial evidence.   Ms. Zwetzig's objection is denied.

**b.   The ALJ's Credibility Assessment of Ms. Zwetzig Is Supported by Substantial Evidence**

Ms. Zwetzig alleges twenty-three reasons why the ALJ's credibility determinations are unsupported.   (Docket 22 at pp. 15-31).   Consequently, Ms. Zwetzig argues the ALJ's RFC assessment is not supported by substantial evidence.   Id. at 31.   The government argues the ALJ's credibility determinations are supported by substantial evidence in the record as a whole and the ALJ accurately assessed Ms. Zwetzig's RFC.   (Docket 23 at p. 4-6).   The court finds the arguments are closely tied together, so both are addressed in this section.

The ALJ determines the weight attributable to a claimant's subjective complaints, including pain, according to the framework created in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   Five Polaski factors guide the ALJ's credibility determinations: "1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions."   Choate, 457 F.3d at 871.   The ALJ need not

28

mechanically discuss each of the <u>Polaski</u> factors.   See <u>Goff v. Barnhart</u>, 421 F.3d 785, 791 (8th Cir. 2005).   Although the ALJ can discount a claimant's subjective complaints for inconsistencies within the record as a whole, "the ALJ must make express credibility findings and explain the record inconsistencies that support the findings."   <u>Dolph v. Barnhart</u>, 308 F.3d 876, 879 (8th Cir. 2002).   The court will not disturb the decision of an ALJ who seriously considers but for good reason expressly discredits a claimant's subjective complaints. See <u>Haggard v. Apfel</u>, 175 F.3d 591, 594 (8th Cir. 1999); <u>see also Perkins v. Astrue</u>, 648 F.3d 892, 900 (8th Cir. 2011) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.") (quoting <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1038 (8th Cir. 2001));

The ALJ acknowledged the analytical framework for credibility determinations and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p."   (AR at p. 814).   The ALJ "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."   <u>Id.</u>   The ALJ also considered all of the testimony from Ms. Zwetzig's February 2004, June 2007 and April 2011 hearings, as well as statements and subsequent testimony from Mr. Simms dated April 15, 1998, and from Ms. Shaykett dated March 6, 2000.   <u>Id.</u> at 817.   The ALJ concluded

Ms. Zwetzig's "medically determinable impairments could reasonably be expected to cause *some* of her alleged symptoms, [but Ms. Zwetzig's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible."   Id.   The ALJ also found "Mr. Simm and Ms. Shaykett's statements and testimonies [to be] less than fully credible for the same reasons." Id.

For judicial economy, the court finds it unnecessary to engage in a microanalysis of Ms. Zwetzig's twenty-three point objection to the ALJ's credibility assessments.   The ALJ, in painstaking detail, drafted a twenty-nine page decision documenting Ms. Zwetzig's assertions and provided her specific rationale in support of each finding.   Id. at 817-25.[6]   The vast majority of Ms. Zwetzig challenges regard specific, contextual statements made by the ALJ throughout her decision.   At this stage, for the court to overturn the decision of the ALJ it must find evidence "indicat[ing] that the ALJ would have decided [the case] differently in the absence of the error."   Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) (citations and internal quotation marks omitted).   The court's analysis addresses all of Ms. Zwetzig's legal objections, though not in the chronological order provided by Ms. Zwetzig.

### i.   **Ms. Zwetzig's Physical Impairments**

With regard to Ms. Zwetzig's allegations of disability based on her lymphangiomia circumscriptum, the ALJ found inconsistencies in plaintiff's

---

[6]Ms. Zwetzig did not object to the factual references regarding her alleged disabilities and treatment in the ALJ's decision.

testimony.   At her September 1995 psychological examination with Dr. Renka, Ms. Zwetzig reported she had a lifting restriction of 27 pounds.   (AR at p. 194). In February 1997, Ms. Zwetzig testified "she could lift/carry only five pounds with her right upper extremity and 15 pounds using both upper extremit[ies]," based on the advice of Dr. MacGrann.   See Docket 20 at ¶ 171; AR at p. 90. However, Dr. McGrann's office notes did not reflect any lifting or activity restrictions.   (Docket 20 at ¶ 171).   In the June 1995 disability report, Ms. Zwetzig stated "the heaviest [she] lifted was 50 pounds," but in her 2007 hearing she testified she "could lift and carry [only] 10-20 pounds."   Id. at ¶ 172.   Ms. Zwetzig complained of pain ranging from a 2/10 to a 5/10 but failed to take prescription pain medication on a consistent basis.   (AR at p. 818).   "A lack of strong pain medication is inconsistent with subjective complaints of disabling pain."   Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) (citing Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992)).

The court agrees with the ALJ's determination these inconsistent statements regarding Ms. Zwetzig's ability to lift undermine her credibility regarding the extent of her physical restrictions due to her right shoulder problems.   Nonetheless, the ALJ afforded Ms. Zwetzig "some benefit of the doubt" and limited her to a range of light work, requiring she only lift and carry 20 pounds occasionally and 10 pounds frequently.   (AR at p. 818).   The ALJ's credibility determination and RFC assessment are supported by substantial evidence.   Choate, 457 F.3d at 869.

31

The ALJ found inconsistencies in Ms. Zwetzig's statements she was unable to sit for more than 30-45 minutes before needing to stand up or walk around; she was unable to stand for more than 45 minutes; and she was unable to walk for more than 30 minutes.   (AR at p. 818).   In the June 1995 disability report, Ms. Zwetzig said she could walk for two hours, stand for one hour and sit for five hours.   Id. at 92.   In her 2007 hearing, ten years after the end of the adjudicative period, Ms. Zwetzig testified that she could sit comfortably for only 1 hour, stand only for 10-20 minutes and walk only three or four blocks.   Id. at 818.

The court agrees with the ALJ that Ms. Zwetzig's testimony is inconsistent and tends to undermine her credibility.   The ALJ's decision to assign more weight to those statements made closer in time to the adjudicative period is reasonable.   The ALJ gave Ms. Zwetzig the "benefit of the doubt" and limited her RFC to only require "sitting for one hour at a time with the option to stand and stretch briefly for one to two minutes at the workstation; and standing and/or walking for one hour at a time with the opportunity to sit for up to 15 minutes, after the one hour point."   Id.   The ALJ's credibility determination and RFC assessment in this regard is supported by substantial evidence.   Choate, 457 F.3d at 869.

With regard to Ms. Zwetzig's pelvic inflammatory disease, the ALJ noted "the record during the adjudicative period is void of any reference to ongoing treatment for this impairment."   Id. at 819.   Following Ms. Zwetzig's December

32

1994 surgery to remove scar tissue and repair a fallopian tube, Ms. Zwetzig next received medical treatment relating to her pelvic inflammatory disease in July 1995.  Id. at 186-90.   In August 1994, Ms. Zwetzig worked two nine hour days as a waitress.   Id. at 820.[7]   In November 1996, Ms. Zwetzig reported "her pelvic pain was only intermittent and lasted less than one minute."   Id. at 819 (citing Exhibit B16).   The ALJ found a lack of ongoing treatment to be inconsistent with subjective complaints of disabling pain.   Id.   "Although an ALJ cannot disregard a claimant's subjective complaints of pain solely because the objective medical evidence does not support them, such complaints may be discounted if there are inconsistencies in the evidence as a whole."   Sullins v. Shalala, 25 F.3d 601, 603 (8th Cir. 1994) (citations omitted).   Accordingly, an ALJ has discretion to find a claimant's credibility regarding subjective complaints of pain is undermined by a lack of ongoing medical treatment and an ability to perform daily activities.   Id. at 603-04.

The ALJ took Ms. Zwetzig's subjective complaints into consideration by limiting the amount of time she is required to stand and walk.   Ms. Zwetzig's RFC excludes her from "work requiring her to traverse rough or uneven terrain or to operate a motor vehicle more than occasionally."   (AR at p. 819).   The ALJ's credibility determination and RFC assessment are supported by substantial evidence.   Choate, 457 F.3d at 869.

---

[7]The court notes Ms. Zwetzig reported feeling "woozy" and "tired" afterwards.

With regard to Ms. Zwetzig's neurocardiovascular syncope, the ALJ determined "the record does not support a conclusion that [Ms. Zwetzig's] syncopal or pre-syncopal episodes have been of disabling frequency or severity." (AR at p. 819).   Ms. Zwetzig did not seek treatment for her syncope during the adjudicative period.   Ms. Zweitzig was diagnosed with syncope in December 1997 and by January 1998 she was "doing much better" after having been prescribed Florinef.   Id. at 342-46.   The ALJ gave effect to Ms. Zwetzig's subjective complaints and the recommendations of Ms. Zwetzig's physician, Dr. Jose M. Texeira, in assessing Ms. Zwetzig's RFC.   The ALJ determined Ms. Zwetzig must avoid: standing for prolonged periods, motionless standing and extreme temperatures.   Id. at 814, 819.   The ALJ's credibility determination and RFC assessment are supported by substantial evidence.   See Sullins, 25 F.3d at 603-04 (discrediting a claimant's credibility for failing to seek medical treatment for an alleged physical impairment).

Ms. Zwetzig's claims she was disabled due to either a hip problem or knee pain are without merit but are nonetheless accounted for in the ALJ's RFC assessment limiting Ms. Zwetzig to a range of *light* work.   Cf. AR at pp. 93-110 (government examiners determined Ms. Zwetzig could perform a range of *medium* work).   Notably, Ms. Zwetzig did not object to the ALJ's finding that "no treating or examining physician has opined that [Ms. Zwetzig's] physical impairments created any greater limitations during the period in question or that

[Ms. Zwetzig] was totally and permanently disabled due to any physical impairment."  Id. at 820.

### ii.   Ms. Zwetzig's Mental Impairments

The ALJ determined "the record does not reflect the debilitating or disabling mental limitations in support of a finding of disability."  Id. at 822. Ms. Zwetzig's own assessment of her mental impairments during the adjudicative period varied considerably.  Id.  Ms. Zwetzig reported she was unable to work due to an inability to concentrate and an inability to accept constructive criticism.  Id.  Ms. Zwetzig claimed to suffer from a disabling and debilitating mental impairment.  Id.  However, Ms. Zwetzig told Drs. Renka and Jenter her condition improved after taking her medication regularly.  Id.  In his 1995 report, Dr. Renka observed Ms. Zwetzig "was able to recall three objects after five minutes, did serial seven subtractions, and recited five digits and then reversed the string."  Id. at 821.

As previously noted, in August 1994, Ms. Zweitzig worked two nine-hour days as a waitress.  Id. at 820.  When a claimant's activities are inconsistent with their claimed level of disability, an ALJ may properly reject the claimant's testimony.  Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001).  In light of the inconsistencies between Ms. Zwetzig's reported symptoms and her ability to do at least some daily work and activities, the ALJ's decision not to fully credit Ms. Zwetzig's testimony is reasonable and supported by substantial evidence. Id.

The ALJ noted "none of [Ms. Zwetzig's] treating sources opined that [she] suffered from a disabling mental condition, during the adjudicative period." Id. at 822.   As previously stated, on November 20, 1997, one psychiatrist, Dr. Blank, concluded his testing of Ms. Zwetzig was "consistent with [his] impression . . . that [Ms. Zwetzig] is exaggerating [her symptoms], possibly with a clear goal in mind. . . . I do not know whether her claim of depressive [symptoms] reflects real [symptoms]." Id. at 623.   Ms. Zwetzig asserts Dr. Blank was unqualified to assess her mental condition and that the ALJ's decision failed to address an Ellsworth Air Force Base ("EAFB") social worker's "referral for civilian medical care" regarding her mental status.   See Docket 22 at pp. 29-30; AR at p. 272.

Dr. Blank was a staff psychiatrist at EAFB.   His findings were made only a few months after the end of the adjudicative period and his general opinion was consistent with that of other doctors during the adjudicative period.   (AR at p. 822).   The ALJ need not mechanically discuss each of the Polaski factors when analyzing a witness' credibility.   See Goff, 421 F.3d at 791.   Evidence indicating Ms. Zwetzig was "faking" a symptom of an alleged impairment is relevant and must be considered when weighing her credibility.   See Tindell v. Barnhart, 444 F.3d 1002, 1006 (8th Cir. 2006).   The ALJ's assessment of Ms. Zwetzig's credibility in this regard is supported by substantial evidence.

Ms. Zwetzig, relying on SSR 96-7p, objects to the ALJ's references to gaps in plaintiff's mental healthcare treatment when assessing credibility.   (Docket 20 at pp. 22-28).   The court notes this was but one factor in the ALJ's

36

determination not to credit Ms. Zwetzig's allegation of mental disability. SSR 96-7p does not bar the ALJ from inquiring into the reason for the gaps in Ms. Zwetzig's medical treatment.   See SSR 96-7p, 1996 WL 374186. SSR 96-7p is properly understood as a tool to weigh the level or frequency of a claimant's medical treatment against the level of her complaint.   Id.   The questions identified by Ms. Zwetzig as prerequisites before an ALJ can consider information regarding the claimant's treatment records are preceded by "[f]or example," indicating the ALJ may, but does not have to, ask the questions that follow.   Id.   The ALJ need not engage in a formulaic recitation of those specific questions but may ask questions meant to probe the claimant's credibility.   The questions listed in SSR 96-7p are meant merely as a starting point for this examination.

Ms. Zwetzig alleged she lacked the financial resources to pay for mental health treatment during the adjudicative period.   However, she sought treatment for low back pain, headaches, ear infections and sinusitis.   (AR at pp. 146-59, 229-33).   Contrary to Ms. Zwetzig's assertions, the ALJ did not "discount[] [Ms. Zwetzig's]mental impairment solely because she failed to seek formal treatment."   (Docket 22 at p. 26) (citing Boulis-Gasche v. Commissioner, 451 F. App'x 488, 439 (6th Cir. 2011)).   The ALJ's analysis challenged Ms. Zwetzig's credibility by demonstrating she had the ability and willingness to seek medical treatment in other healthcare matters, but nevertheless went long

stretches without seeking any treatment related to the mental impairments she now claims were a disability.   See Sullins, 25 F.3d at 604.

The importance of Ms. Zwetzig's failure to consistently seek out medical treatment is highlighted by her failure to take Prozac and other prescribed medications regularly.   " 'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.' "   Renstrom v. Astrue, 680 F.3d 1057, 1066-67 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (citations and internal quotation marks omitted)).   Dr. Renka noted Ms. Zwetzig reported "Prozac was enormously helpful but the therapy itself was probably at least as helpful."   (AR at 550).   Dr. Renka opined Ms. Zwetzig "needs Prozac to avoid recurrence of depression."   Id. at 552.   On March 6, 1996, Ms. Zwetzig reported "struggling with depression and irritability" after having run out of Prozac and Trazodol (a sleep aid) two months earlier.   Id. at 230.   On August 18, 1997, Ms. Zwetzig reported "doing much better on medication.   Depressed mood has improved significantly. . . . [and] she is sleeping well, has improved interests, improved energy, improved concentration, and improved appetite."   Id. at 634.   At the time, Ms. Zwetzig was taking Depakote, Restoril, and a Vancenase inhaler.   Id.

The ALJ appropriately analyzed Ms. Zwetzig's credibility in relation to her failure to consistently take her medication.   The court finds the ALJ's assessment of Ms. Zwetzig's credibility is supported by substantial evidence. The ALJ's RFC determination also accounts for Ms. Zwetzig's inability to

multi-task, her need for reduced interpersonal contact, and work which does not involve complex demands.

In sum, the court finds the ALJ properly considered and discounted Ms. Zwetzig's claimed mental disabilities.   The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."   Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (citations and internal quotation marks omitted).   The ALJ's credibility determination regarding Ms. Zwetzig's disability stands and Ms. Zwetzig's objection is denied.

### c.   The ALJ's Credibility Assessment of Ms. Shaykett and Mr. Simms Is Supported by Substantial Evidence

Ms. Zwetzig's objection that the ALJ improperly assessed the credibility of her mother, Ms. Shaykett, and her husband, Mr. Simms, mirrors that which she made for herself.   Both Ms. Shaykett and Mr. Simms claim Ms. Zwetzig's alleged mental impairment was significantly debilitative and disabling during the adjudicative period.   For the reasons set forth above regarding the ALJ's assessment of Ms. Zwetzig's credibility, the court finds the ALJ's assessment of Ms. Shaykett's and Mr. Simm's credibility is supported by substantial evidence. Ms. Zwetzig's objection is denied.

### d.   The ALJ Appropriately Considered the Aggregate Effect of Ms. Zwetzig's Impairments

Ms. Zwetzig asserts the ALJ failed to consider all of the SSR 96-8p factors. (Docket 22 at pp. 31-34).   Ms. Zwetzig further argues the ALJ, by giving little

39

weight to Dr. Renka's 1998 opinions, failed to give effect to the aggregate impact of her impairments.   Id.   The court already determined the ALJ's decision to give "substantial weight" to Dr. Renka's 1995 opinions and her credibility assessments of Ms. Zwetzig, Ms. Shaykett and Mr. Simms are supported by substantial evidence.   The ALJ's RFC assessment also took into account Ms. Zwetzig's subject complaints even when the ALJ determined Ms. Zwetzig's allegations were contrary to the weight of the evidence in the record.   For these reasons, the ALJ's RFC assessment is supported by substantial evidence.   Ms. Zwetzig's objections are denied.

**3.    The ALJ Did Not Rely on Flawed Vocational Expert Testimony**

Ms. Zwetzig argues the ALJ's finding "there are jobs that exist in significant numbers in the national economy that [Ms. Zwetzig] could perform" is not supported by substantial evidence on the record as a whole.   (AR at p. 826); (Docket 22 at p. 34).   Ms. Zwetzig asserts because the ALJ incorrectly assessed her RFC, the testimony of vocational expert Tydsdal was based on a flawed hypothetical question and does not constitute substantial evidence.   (Docket 22 at p. 34).

A "hypothetical question posed to [a] vocational expert must precisely set out all claimant's impairments."   Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir. 1992) (citing O'leary v. Schweiker, 710 F.2d 1334, 1343 (8th Cir. 1983)). "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures

the concrete consequences of a claimant's deficiencies."   Cox v. Astrue, 495

F.3d 614, 620 (8th Cir. 2007) (citing Porch v. Chater, 115 F.3d 567, 572 (8th Cir.

1997) (citing Pickney v. Chater, 96 F.3d 294, 297 (8th Cir. 1996))).

The court already concluded the ALJ's assessment of Ms. Zwetzig's RFC is

supported by substantial evidence on the record as a whole.   See supra.   The

court finds the ALJ's hypothetical question "whether jobs exist in the national

economy for an individual with [Ms. Zwetzig's] age, education, work experience,

and residual functional capacity" was an accurate hypothetical that captured the

concrete consequences of Ms. Zwetzig's deficiencies.   (AR at p. 826).   Mr.

Tysdal's response to the hypothetical question constitutes substantial evidence

in support of the ALJ's determination that "jobs exist in significant numbers in

the national economy that the claimant could perform."[8]   Id.   Therefore, Ms.

Zwetzig was not disabled during the adjudicative period, and the court denies

Ms. Zwetzig's objection.   Cox, 495 F.3d at 620.

---

[8]The court notes the ALJ's calculation of the total jobs available
nationwide to Ms. Zwetzig following a 60 percent erosion in jobs due to her need
to sit for 15 minutes after one hour of uninterrupted standing is in error.   See
AR at p. 827.   Although a 60 percent erosion in work would leave approximately
296 jobs in the Region, the jobs available to Ms. Zwetzig nationwide would be
31,600, not 35,600.   Id.   Notwithstanding this 4,000 job reduction nationwide,
the court finds the ALJ's determination that jobs exist in significant numbers in
the national economy Ms. Zwetzig could perform is supported by substantial
evidence.   The addition of jobs available to Ms. Zwetzig as an addressing clerk,
jewelry preparer and lens inserter emphasize this point.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the

Commissioner (Docket 21) is denied.

IT IS FURTHER ORDERED that the decision of the Commissioner, dated

May 11, 2012, is affirmed.

Dated September 30, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

42